IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-03420-PAB-NYW

ESMERALDO VILLANUEVA ECHON, JR.,
MARIBEL ECHON, and
JUSTIN ECHON,

    Plaintiffs,

v.

WILLIAM SACKETT and
LEONIDA SACKETT,

    Defendants.
_____

# ORDER
_____

This matter is before the Court on the issue of damages. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## I. BACKGROUND

The Court held a three-day jury trial in this case, beginning on February 12, 2018. Docket Nos. 198, 199, 200.[1] On February 14, 2018, the jury returned a verdict in favor of plaintiffs on their claims under the Colorado Minimum Wage of Workers Act/Colorado Minimum Wage Order, the Colorado Wage Claim Act, and 18 U.S.C. § 1589. Docket No. 205. The jury awarded the following damages on plaintiffs' Colorado wage claims: Esmeraldo Echon - $40,022; Maribel Echon - $14,811; Justin Echon - $15,678. *Id.* at 3. The jury apportioned these damages evenly between the

---

[1]Defendants represented themselves at the trial.

two defendants.  *Id.*  The jury also awarded economic and non-economic damages to Esmeraldo and Justin Echon under 18 U.S.C. § 1589.  *Id.* at 5.  The economic damages consisted entirely of unpaid wages and matched the amounts awarded to Esmeraldo and Justin Echon under the Colorado wage laws.  *See id.*  Under § 1589, the jury attributed liability for 33% of the total economic and non-economic damages awarded to defendant William Sackett and 67% to defendant Leonida Sackett.  *Id.* at 5-6.

Before trial, the Court adopted the magistrate judge's recommendation and granted summary judgment in favor of plaintiffs on their breach of contract claims in the amount of $31,439.50.  Docket No. 138.  In determining defendants' liability for breach of contract, the magistrate judge compared the support provided by defendants to plaintiffs for the years 2012 through 2014 with 125% of the poverty threshold for each year.  *See* Docket No. 116 at 36.  To calculate the support provided by defendants, the magistrate judge relied on the following amounts that were deemed uncontested in light of defendants' failure to disclose information during discovery: housing valued at no more than $750 per month; food valued at no more than $12,500; transportation for Justin Echon and plaintiffs' minor son to and from school valued at no more than $1,600; and utilities valued at no more than $300 per month.  *Id.* at 37.  The magistrate judge further accounted for other income received by plaintiffs during the relevant time period, including $1,400 earned by Esmeraldo Echon through a construction job in 2012, $1,888 in food stamps received by plaintiffs in 2013, $4,412 in food stamps received by plaintiffs in 2014, and $3,500 that Leonida Sackett allegedly gave

2

Esmeraldo Echon in 2011. *Id.* The magistrate judge noted that defendants denied giving plaintiffs any additional monetary support after 2011. *Id.* Additionally, defendants did not respond to plaintiffs' interrogatories regarding defendants' financial support of plaintiffs or produce written evidence of any other support they provided during the years 2012 through 2014. *Id.* As a result, the magistrate judge found that "Defendants should be precluded from offering such evidence now or at trial." *Id.* Based on the undisputed support provided by defendants during the relevant time period, the magistrate judge determined that the difference between plaintiffs' household income and 125% of the federal poverty guideline was $13,916.50 for 2012, $7,305.50 for 2013, and $10,217.50 for 2014. *Id.* at 38. This came to a total difference of $31,439.50 for 2012-2014, which established defendants' base liability for breach of contract. *Id.* Although the magistrate judge noted that some of the support amounts "extend[ed] to liability only" and recommended that "the issue of damages be reserved to the jury," *id.*, n.13, plaintiffs submitted a trial brief on January 24, 2018 in which they stipulated to $31,439.50 in damages on their breach of contract claims. Docket No. 175 at 8. In support of the stipulation, plaintiffs noted that the $31,439.50 represented the "floor" of their possible recovery and that the "damages owed to Plaintiffs on [their breach of contract claims] could only increase." *Id.* The Court accepted plaintiffs' stipulation at the trial preparation conference held on January 26, 2018. Docket No. 181. Accordingly, the issue of contract damages was not submitted to the jury.

The Court instructed the jury that it could "award damages in the specified categories of damages on more than one claim" and that the Court would "ensure that

damages in any specified category [were] awarded to plaintiff only once." Docket No. 201 at 26 (Jury Instruction No. 19). Accordingly, the Court must determine whether to reduce the jury's damages award in order to ensure that plaintiffs do not recover twice on their claims. On February 16, 2018, the Court directed the parties to file briefs addressing four questions related to the issue of damages: (1) are the unpaid wages awarded to Esmeraldo and Justin Echon duplicative of the economic damages awarded under § 1589 and, if so, which law(s) should serve as the basis for recovery; (2) how should the Court allocate economic damages between the two defendants; (3) is the award of unpaid wages under the Colorado wage laws or § 1589 duplicative of the damages for plaintiffs' breach of contract claims and, if so, which law(s) should serve as the basis for recovery; and (4) are any other categories of damages awarded by the jury duplicative. Docket No. 207. Plaintiffs filed their response to the Court's minute order on February 27, 2018. Docket No. 211. Defendants, now represented by counsel, filed a response on March 5, 2018. Docket No. 212.

## II. ANALYSIS

### A. Unpaid Wages Under the Colorado Wage Laws and 18 U.S.C. § 1589

The parties agree that the damages awarded to Esmeraldo and Justin Echon under the Colorado wage laws are duplicative of the economic damages awarded under § 1589. Docket No. 211 at 1; Docket No. 212 at 2. However, neither party was able to find any case law addressing the question of which law should serve as the basis for recovery. Docket No. 211 at 1; Docket No. 212 at 2. Plaintiffs "request that the judgment of the Court be entered under 18 U.S.C. § 1589," but do not provide any

basis for their selection. Docket No. 211 at 2. Defendants request that the damages be awarded under the Colorado wage laws because this "case reflects more closely a wage dispute under state law than a human trafficking or forced labor case under a federal criminal statute." Docket No. 212 at 2. The Court will award Esmeraldo and Justin Echon their unpaid wages under the Colorado wage laws. The Court's instructions for calculating unpaid wages were taken directly from the Colorado Minimum Wage Order, *see* Docket No. 201 at 28 (Jury Instruction No. 21), and awarding damages under the Colorado wage laws obviates the need to address any inconsistency in the jury's allocation of liability between the two defendants.

### B. Proper Allocation of Damages Between Defendants

The Court asked the parties to brief the issue of how to properly allocate liability between William and Leonida Sackett for the unpaid wages awarded to Esmeraldo and Justin Echon. Docket No. 207 at 1-2. Both parties assert that the Court should apportion liability 50/50 between the two defendants. Docket No. 211 at 2-3; Docket No. 212 at 3. Because this is consistent with the jury's verdict on plaintiffs' Colorado wage claims, *see* Docket No. 205 at 3, the Court will apportion liability for the unpaid wages evenly between the two defendants.

### C. Damages for Unpaid Wages and Breach of Contract

The Court asked the parties to discuss whether the unpaid wages awarded under either the Colorado wage laws or § 1589 are duplicative of the $31,439.50 awarded by the Court on plaintiffs' breach of contract claims. Docket No. 207 at 2.

In their response, defendants challenge the premise of the question, asserting

that damages were never awarded on plaintiffs' breach of contract claims. Docket No. 212 at 4-5. This is incorrect. Although it is true that summary judgment was not granted on the issue of contract damages, the Court's order adopting the magistrate judge's recommendation established certain facts as true for purposes of this action. As explained in the magistrate judge's recommendation, those facts establish defendants' base liability in connection with plaintiffs' breach of contract claims. Docket No. 116 at 37-38. Plaintiffs subsequently stipulated to that "floor" in order to avoid a jury trial on the issue. By the Court's acceptance of that stipulation at the trial preparation conference, the Court established defendants' liability under plaintiffs' breach of contract claims for $31,439.50 and obviated the need to submit the issue to the jury.

Defendants' remaining argument is that plaintiffs' breach of contract claims were pled in the alternative to plaintiffs' statutory claims and were thus rendered moot by the jury's verdict. Docket No. 212 at 5. But plaintiffs did not plead their contract claims in the alternative to their claims under the Colorado wage laws or § 1589. Instead, they pled a breach of contract claim in the alternative to a breach of contract-third party beneficiary claim. *See* Docket No. 104 at 26 (arguing that plaintiffs are entitled to summary judgment on their "breach of contract claim (Fifth Claim) or in the alternative, their breach of contract-third party beneficiary claim (Sixth Claim)"); Docket No. 116 at 36 n.11 (noting that plaintiffs had satisfied their burden on summary judgment regardless of which contract theory applied). The breach of contract claims were therefore not rendered moot by the jury's verdict.

Plaintiffs make two arguments in response to the Court's request for briefing on

the issue of contract damages. First, plaintiffs assert that the jury's award of unpaid wages is not duplicative of the damages for breach of contract because "[i]t appears highly likely that the jury already made a deduction from Plaintiffs' unpaid wages for the support Defendants provided." Docket No. 211 at 4. However, the question is not whether the award of unpaid wages includes a deduction for the value of defendants' support, but whether the unpaid wages awarded by the jury are sufficient to place "plaintiff[s] in as good a position as [they] would have been" had defendants fulfilled their support obligations under the I-864 affidavit. *Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1024 (N.D. Cal. 2008). In calculating a defendant's liability for breach of his or her support obligations under an I-864 affidavit, courts have consistently deducted income received by the plaintiff during the relevant time period. *See, e.g.*, *Shumye*, 555 F. Supp. 2d at 1027-28 (calculating plaintiff's income as sum of student grants, income received through employment, alimony payments, and value of housing subsidies received and comparing total to 125% of federal poverty threshold); *Cheshire v. Cheshire*, 2006 WL 1208010, at *6 (M.D. Fla. May 4, 2006) (stating that "[a] sponsor's financial obligation under the affidavit of support should be reduced by the amount of any income or benefits the sponsored immigrant receives from other sources."). Because the unpaid wages awarded by the jury include income earned by the plaintiffs during the years relevant to their breach of contract claims – 2012 through 2014 – the Court must recalculate defendants' support obligations in light of those wages.

Plaintiffs acknowledge that "there is theoretical overlap" between their wage claims and their breach of contract claims. Docket No. 211 at 5. However, plaintiffs contend that there is "no non-arbitrary legal basis for the Court to justly deduct one

7

amount from the other." *Id.* at 6. The Court disagrees. Plaintiffs offered to stipulate to their damages for breach of contract in order to avoid having to submit the issue to the jury. Docket 175 at 8. The Court further adopted plaintiffs' proposed jury instruction informing the jury that it could award duplicative damages with the expectation that the Court would determine the proper allocation of damages after trial. *See* Docket No. 164 at 14 (Plaintiffs' Jury Instruction No. 11). In light of these facts, it is appropriate to construe any ambiguities concerning damages in defendants' favor.

Further, there is a principled basis on which to determine defendants' support obligations in light of the unpaid wages awarded by the jury. Plaintiffs contend that there is no way "to determine how much Defendants may have owed each year for their Affidavit of Support obligations relative to the wages owed for that year" because the jury awarded damages for plaintiffs' entire period of work. Docket No. 211 at 7. But plaintiffs' proposed verdict form invited the jury to award damages in this manner. *See* Docket No. 165 at 2. Plaintiffs never indicated that a failure to determine plaintiffs' unpaid wages on an annual basis would interfere with the Court's ability to offset plaintiffs' contract damages by the amount of unpaid wages awarded. In light of plaintiffs' failure to raise this issue during the trial, the Court finds it appropriate to determine defendants' support obligations on an aggregate basis. At least one court has determined contract damages pursuant to an affidavit of support in this manner. In *Cheshire*, the court added together annual income amounts equal to 125% of the federal poverty threshold during a six-year period to determine the defendant's total support obligations for that period. *See* 2006 WL 1208010, at *6. The court then reduced that aggregate amount by the plaintiff's total income for the same period in

8

order to determine the defendant's liability. *See id.* The Court will apply the same analysis here. As determined by the magistrate judge, 125% of the poverty threshold for plaintiffs' household equaled $28,812.50 in 2012, $29,437.50 in 2013, and $29,812.50 in 2014. *See* Docket No. 116 at 38. Adding these amounts together, the total of 125% of the federal poverty threshold for 2012 to 2014 was $88,062.50. Plaintiffs asserted that their annual household income was no more than $14,896 for 2012, $22,132 for 2013, and $19,595 for 2014, resulting in a total income of $56,623 for that time period. *See id.*; *see also* Docket No. 104 at 29. The jury further awarded plaintiffs a total of $70,511 in unpaid wages for work performed during that period.[2] Adding together the income to which plaintiffs stipulated and the jury's award of unpaid wages results in a total household income of $127,134. Because this amount is higher than 125% of the federal poverty threshold for 2012-2014, plaintiffs are not entitled to recover damages on their breach of contract claims. *See Shumye*, 555 F. Supp. 2d at 1024 ("The Affidavit of Support provides for the measure of damages that would put the Plaintiff in as good a position she would have been in had the contract been

---

[2]Esmeraldo Echon's award may have included unpaid wages for work performed in 2011 – a year that is not covered by plaintiffs' breach of contract claims. However, plaintiffs only requested $7,097 in unpaid wages for that year, *see* Docket No. 214-1 at 6, which is a small fraction of the $71,482 in wages allegedly owed to him for work performed between 2011 and 2014. *See id.* Because plaintiffs' stipulated income for 2012-2014 plus the jury's award of unpaid wages for 2011-2014 results in a total household income that far exceeds 125% of the poverty threshold for that period, deducting even the total amount of unpaid wages requested by plaintiffs for 2011 would not reduce plaintiffs' household income below the 125% threshold. That the jury may have awarded damages for 2011 thus does not undermine the Court's conclusion that plaintiffs are not entitled to recover on their breach of contract claims. Plaintiffs are, of course, entitled to recover unpaid wages that raise their combined income above 125% of the poverty threshold.

performed." (internal quotation marks omitted)).³

Plaintiffs contend that subtracting the unpaid wages awarded by the jury from the breach of contract damages will result in a double-counting of defendants' monetary support. Docket No. 211 at 6. But the jury was not instructed to deduct defendants' support from the unpaid wages owed to plaintiffs and plaintiffs have presented no other evidence, aside from their own speculation, that the jury did so. *See Bland v. Sirmons*, 459 F.3d 999, 1015 (10th Cir. 2006) ("The jury is presumed to follow its instructions . . . .").

## III. CONCLUSION

For the foregoing reasons, and pursuant to the jury's verdict on February 14, 2018, it is

**ORDERED** that Esmeraldo Echon is entitled to $40,022 in unpaid wages under the Colorado Minimum Wage of Workers Act/Colorado Minimum Wage Order and the Colorado Wage Claim Act, 50% of which is awarded against William Sackett and 50% against Leonida Sackett. It is further

**ORDERED** that Esmeraldo Echon is entitled to $80,044 in non-economic damages for his claim of forced labor under 18 U.S.C. § 1589, 33% of which is awarded

---

³Although the Court agrees that a defendant's support obligations should typically be calculated on an annual basis, as the court determined in *Shumye*, the Court finds it appropriate to follow *Cheshire*'s approach given that plaintiffs' actions invited the inconsistency between the way damages were awarded on their breach of contract claims and the jury's determination of their unpaid wages. However, even if the Court were to follow the *Shumye* approach, utilizing the annual amounts of unpaid wages requested by plaintiffs during closing argument, *see* Docket No. 214-1 at 6, 10, 15, to calculate the damages likely awarded by the jury for each year worked, plaintiffs' household income for the years 2012 to 2014 would still exceed 125% of the federal poverty threshold.

10

against William Sackett and 67% against Leonida Sackett.  It is further

**ORDERED** that Esmeraldo Echon is entitled to $120,000 in punitive damages under 18 U.S.C. § 1589, 50% of which is awarded against William Sackett and 50% against Leonida Sackett.  It is further

**ORDERED** that Maribel Echon is entitled to $14,811 in unpaid wages under the Colorado Minimum Wage of Workers Act/Colorado Minimum Wage Order and the Colorado Wage Claim Act, 50% of which is awarded against William Sackett and 50% against Leonida Sackett.  It is further

**ORDERED** that Justin Echon is entitled to $15,678 in unpaid wages under the Colorado Minimum Wage of Workers Act/Colorado Minimum Wage Order and the Colorado Wage Claim Act, 50% of which is awarded against William Sackett and 50% against Leonida Sackett.  It is further

**ORDERED** that Justin Echon is entitled to $31,366 in non-economic damages for his claim of forced labor under 18 U.S.C. § 1589, 33% of which is awarded against William Sackett and 67% against Leonida Sackett.  It is further

**ORDERED** that Justin Echon is entitled to $30,000 in punitive damages under 18 U.S.C. § 1589, 50% of which is awarded against William Sackett and 50% against Leonida Sackett.  It is further

**ORDERED** that, within 14 days of the entry of this Order, plaintiffs may have their costs by filing a Bill of Costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.

DATED May 4, 2018.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge